UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MOSES R. KIRSCHKE #384285,　　　　　　　Case No. 2:17-cv-110

　　　　Plaintiff,　　　　　　　　　　　　　　Hon. Gordon J. Quist
　　　　　　　　　　　　　　　　　　　　　　U.S. District Judge
v.

CECIL DALEY, et al.,

　　　　Defendants.
　　　　　　　　　　　　　　　　　/

## REPORT AND RECOMMENDATION

This is a civil rights action brought by state prisoner Moses R. Kirschke pursuant to 42 U.S.C. § 1983. Kirschke alleges that while he was confined at the Kinross Correctional Facility (KCF), between April 25, and May 24, 2016, Defendants – Assistant Resident Unit Supervisor Patrick Harrington and Resident Unit Officers Marc Pillion, Eric MacDonald, Mark Black, Joe Nault, Steven Williams, Marty Miller, and Ron McKechnie – denied him toilet paper in violation of his Eighth Amendment and Fourteenth Amendment rights. In addition, Kirschke asserts that after he filed a grievance regarding the denial of toilet paper, Defendants McKechnie and Nault continued to deny him toilet paper in retaliation.

Defendants filed a motion for summary judgment. (ECF No. 129.) Kirschke filed a response. (ECF No. 142.) I respectfully recommend that the Court:

1) GRANT Defendants' motion for summary judgment with respect to Kirschke's Eighth Amendment and Fourteenth Amendment Due Process claims.

2) DENY Defendants' motion for summary judgment with respect to Kirschke's Fourteenth Amendment Equal Protection and the First Amendment retaliation claims against Defendants Nault and McKechnie.

## Plaintiff's Allegations

Kirschke alleges that Defendants violated his Constitutional rights on a number of occasions in April and May 2016. All of Kirschke's claims are connected to his requests for toilet paper and Defendants' responses to those requests.

Kirschke asserts that, on April 25, 2016, he asked Defendants Pillion and MacDonald for a roll of toilet paper. Kirschke says that Pillion and MacDonald told him that Defendant Harrington instructed them not to give out anymore toilet paper. (ECF No. 1, PageID.8.)

Kirschke asserts that, on April 28, 2016, he asked Defendant Black for a roll of toilet paper. Black allegedly stated that he did not have any and Kirschke was "shit outta luck." (*Id*. at PageID.9.)

Kirschke asserts that, on April 29, 2016, he asked Defendants Miller and McKechnie for a roll of toilet paper and they denied the request, explaining that they had already passed out 2 rolls of toilet paper in the morning to each cube and that Kirschke "would just have to share." (*Id*.)

Kirschke then allegedly asked Defendants McKechnie and Nault for toilet paper on May 4, 2016, and was told that they did not have any, but only had some for "ride-ins," which are prisoners who come into the prison temporarily. (*Id*.)

Kirschke filed a grievance against Defendant Harrington for denying him toilet paper. (*Id.* at PageID.10-11.) Defendant Harrington signed the Step I grievance response on May 11, 2016 (KCF 16-15-698-3D), which stated:

> Prisoner Kirschke is issued toilet paper along with every other prisoner in A-Unit. This is done in accordance with the requirements of PD 03.03.120.
>
> When a prisoner in A-Unit runs out of toilet paper he can request another roll. It should be noted that the staff in A-Unit state that Kirschke is given more toilet paper on an ongoing basis than any other prisoner in A-Unit. Kirschke states that he needs extra paper for his nose due to his allergies.
>
> It is noted that facial tissue is available for prisoner purchase from the prison store. It is further noted that Kirschke pled guilty to a Class III misconduct on 5/9/16. This involved Kirschke storing a full roll of toilet paper on top of his locker in violation of posted housing rules pertaining to storage of property.

(ECF No. 1-2, PageID.34.)[1]

Kirschke alleges that he received a minor misconduct on May 6, 2016, for having a roll of toilet paper on top of his locker, although one of his cellmates had a bowl on the top of his locker and did not receive a misconduct ticket. (*Id.*) Kirschke received 10 days loss of privileges after he was found guilty. (*Id.*)

Kirschke alleges that, on May 8, 2016, he asked Defendant MacDonald for toilet paper and MacDonald said he had none. (*Id.* at PageID.12.) Kirschke claims

---

1  The Step II grievance response stated that inmates should use toilet paper for bathroom use and that facial tissue should be purchased from the prison store. (ECF No. 1-2, PageID.41.) This grievance response indicates that Kirschke received a misconduct ticket on May 9, 2016. This response contradicts Defendants' affidavit attached as Exhibit D to their motion for summary judgment (ECF No. 131-5, PageID.1511-1512), which states that Kirschke did not receive any misconduct tickets between April 25, 2016 and May 24, 2016.

that Defendant MacDonald made no effort to find him any toilet paper. (*Id.*) Kirschke claims that, on May 9, 2016, he was denied a full roll of toilet paper, because when he made his request, Defendant McKechnie gave him a roll with only about 12 sheets of toilet paper. (*Id.*)

Kirschke alleges that Defendants MacDonald and Pillion denied him toilet paper on May 10, 2016. (*Id.*) Kirschke further alleges that, two days later, on May 12, he received a false misconduct ticket from Defendant Nault for using the bathroom. Kirschke notes that the prisoner he was walking with did not receive a misconduct ticket. (*Id.* at PageID.13.) Kirschke alleges that he received 20 hours of extra duty for the misconduct. (*Id.*)

Kirschke says that when he requested toilet paper on May 14, 2016, Defendant Williams told him that there was none. (*Id.* at PageID.14.) Later, Kirschke asked for some scrap paper and Defendant Williams gave him some from behind the desk. At that point, Kirschke noticed a small locked cage containing 25 to 40 rolls of toilet paper. (*Id.*) When Kirschke asked for some of the toilet paper, Defendant MacDonald told him that they did not have any. (*Id.* at PageID.15.) Defendant MacDonald allegedly informed Kirschke that Defendant Harrington had directed him not to give any toilet paper out and that the toilet paper was for "ride-ins." (*Id.*) Kirschke tried to logically and reasonably explain to Defendant MacDonald that the "ride-ins" could get their toilet paper from another source and that a new shipment of toilet paper would come in. (*Id.*) Kirschke was still unable to obtain toilet paper.

Kirschke complains that Defendant Harrington implemented an arbitrary and unwritten rule that prisoners are provided with no more than three rolls of toilet paper every two weeks.  (*Id*. at PageID.16.)

Kirschke also asserts that Daley's grievance response falsely stated that prisoners were provided three rolls of toilet paper every week.  (*Id*. at PageID.17.)

Kirschke says that, on May 24, 2016, he had a quarter roll of toilet paper and requested more.  Defendants McKechnie and MacDonald told Kirschke they did not have any more.  (*Id*. at PageID.18.)  Kirschke asserts that he was aware that they had rolls next to their desk and additional rolls for "ride-ins."  (*Id*.)

Kirschke asserts that Defendants Black, Miller, Williams, Pillion, MacDonald, and McKechnie acted with deliberate indifference to a basic human need by denying him toilet paper, and that Harrington established a policy limiting toilet paper to inmates.  Kirschke alleges that Defendants Pillion, MacDonald, and McKechnie violated his due process rights because the denial of toilet paper imposed an atypical and significant hardship on him.

Kirschke argues that Defendants McKechnie and Nault violated his equal protection rights and retaliated against him by issuing minor misconduct tickets.  In addition, Kirschke alleges that Defendant McKechnie and other unit staff retaliated against him by denying him toilet paper.  Kirschke requests declaratory relief and damages.

## Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

## Qualified Immunity

Defendants argue that they are entitled to qualified immunity. "Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Phillips v. Roane County*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Determining whether the government officials in this case are entitled to qualified

immunity generally requires two inquiries: "First, viewing the facts in the light most favorable to the plaintiff, has the plaintiff shown that a constitutional violation has occurred? Second, was the right clearly established at the time of the violation?" *Id.* at 538-39 (citing *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006).

"A right is 'clearly established' for qualified immunity purposes if 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Humphrey v. Mabry*, 482 F.3d 840, 847 (6th Cir. 2007) (quoting *Saucier v. Katz*, 533 U.S. 194, 202, (2001)). The inquiry whether the right was clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201; *see also Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014) (directing courts "not to define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced") (internal quotation marks and citations omitted). Thus, the doctrine of qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." *Humphrey*, 482 F.3d at 847 (internal quotation marks omitted).

"The relevant inquiry is whether existing precedent placed the conclusion" that the defendant violated the plaintiff's rights "in these circumstances 'beyond debate.'" *Mullenix v. Luna*, 36 S.Ct. 305, 309 (2015), citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

### 1. Eighth Amendment

Kirschke argues that Defendants violated his Eighth Amendment rights by denying his requests for toilet paper. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involve the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted).

Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).

Allegations about temporary inconveniences, such as being deprived of a lower bunk, subjected to a flooded cell, or deprived of a working toilet, do not demonstrate that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency. *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *see also J.P. v. Taft*, 439 F. Supp. 2d 793, 811 (S.D. Ohio 2006) (claim that prisoner was deprived of a working toilet was denied because "minor inconveniences resulting from the difficulties in administering a large detention facility do not give rise to a constitutional claim." (internal citation omitted)); *Hartsfield v. Vidor,* 199 F.3d 305, 310 (6th Cir. 1999) (stating that "deprivations of fresh water and access to the toilet for a 20-hour period, while harsh, were not cruel and unusual punishment") (citing *Stephens v. Carter Cty. Jail*, 816 F.2d 682 (6th Cir.1987)).

Similarly, allegations that a prisoner was simply denied an additional allotment of toilet paper, which caused him to be temporarily inconvenienced, do not rise to the level of an Eighth Amendment violation. "[T]he failure to provide a

prisoner with an adequate supply of toilet paper does not create a violation of constitutional magnitude." *Citro v. Zeek*, 544 F.Supp.829 (W.D. N.Y. 1982) (dismissing as frivolous the claim that an inmate was denied additional toilet paper rolls upon request); *Cusam v. Sobek*, 604 F. Supp. 2d 416 (N.D. N.Y. 2009) (a 12-day denial of basic necessities such as toilet paper and soap were insufficient to establish an Eighth Amendment violation without the inclusion of other deprivations that could elevate a temporary inconvenience to the level of cruel and unusual punishment); *but see Flanory v. Bonn*, 604 F.3d 249, 255-56 (6th Cir. 2010) (holding that allegations that an inmate was deprived of toothpaste for 337 days and experienced dental health problems did not constitute a temporary inconvenience and were sufficient to state an Eighth Amendment claim).

Kirschke alleges that he received three rolls of toilet paper every two weeks, but was denied, on occasion, additional toilet paper upon request. Kirschke alleges in his complaint that sometimes he made requests for toilet paper when he already had toilet paper. Kirschke does not allege that he has a medical problem that required access to additional toilet paper. Kirschke denies having diarrhea or an abnormal number of bowel movements. (ECF No. 131-2, PageID.1482.) At his deposition, he explained that, on two occasions between April and May of 2016, he had the flu and he needed additional toilet paper to blow his nose. (*Id.* at PageID.1482-1484.) Kirschke does not explain why he was unable to purchase tissue paper from the prison store.

Kirschike has failed to establish that any of the Defendants violated clearly established law and acted with deliberate indifference to an alleged serious basic need for additional toilet paper. In *Harris v. Fleming*, 839 F.2d 1232, 1235-36 (7th Cir. 2004), the court held that the deprivation of hygiene items including toilet paper for a period of 5 days was a temporary inconvenience that could demonstrate some neglect, but could not rise to the level of cruel and unusual punishment. Similarly, in *McNeal v. Knott,* 590 Fed. Appx. 566 (6th Cir. 2014), the Sixth Circuit upheld summary judgment based upon qualified immunity where a prisoner complained that he was denied use of the restroom during daily prison count on some occasions. In that case, prisoner McNeal alleged that he needed to use the restroom three times per hour due to an enlarged prostate. McNeal was offered incontinence pads but refused them. The Sixth Circuit found that neither "controlling authority" nor "a robust consensus of cases of persuasive authority impose liability on prison officials who denied bathroom privileges to inmates under similar conditions." *Id*. at 569.

In this case, Kirschke received a regular allotment of toilet paper, but he did not always receive additional toilet paper upon request. Under these circumstances, Kirschke has failed to show that the occasional denial of additional toilet paper during April and May of 2016, rose above the level of a temporary inconvenience. In the opinion of the undersigned, Kirschke's Eighth Amendment claims should be dismissed (1) because there is not genuine issue of fact regarding these claims, and (2) because Kirschke has failed to show that any of the Defendants violated clearly established law while acting with deliberate indifference to his basic needs.

**2. Fourteenth Amendment Due Process**

Kirschke's due process claims are similarly flawed. He argues that his procedural due process rights were violated because Defendants failed to follow a prison policy that created a liberty interest in obtaining additional toilet paper upon request, and that the failure to provide him with toilet paper upon request constituted an atypical and significant hardship in relation to the ordinary incidents of prison life. MDOC Policy Directive 03.03.130 (C) (effective date 02/23/2009) provides that "[p]risoners shall be provided or are permitted to purchase hygiene items, including . . . toilet paper . . . ." In addition the policy requires staff to refrain from depriving prisoners of "hygienic necessities." *Id.* at (K)(2).

In asserting that the denial of additional toilet paper upon request is an atypical and significant hardship in relation to the ordinary incidents of prison life, Kirschke relies on *Sandin v. Conner*, 515 U.S. 472 (1995), and focuses only on the "atypical and significant hardship" requirement. A plaintiff seeking to allege a procedural due process violation based on a state created liberty interest must show that it is derived from mandatory language in a regulation. *Id.* at 484. In the opinion of the undersigned, Kirschke has failed to show that mandatory language in the MDOC policy directives requires corrections employees to provide inmates additional rolls of toilet paper upon request. Nor does Kirschke show that the temporary occasional denial of requested toilet paper is an atypical and significant hardship in prison.

Furthermore, it should be noted that the Due Process Clause protects the process by which infringements or deprivations of life, liberty and property are addressed rather than specific outcomes. "[T]he deprivation by state action of a constitutionally protected interest in 'life, liberty or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law.*" *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (emphasis in original). Kirschke made several requests for additional toilet paper during April and May of 2016. On some occasions he received additional toilet paper, on other occasions he did not. Kirschke filed grievances that were processed through the grievance system. Kirschke has failed to explain how Defendants denied him any procedural process that he was due. In the opinion of the undersigned, Kirschke's Fourteenth Amendment Due Process claims should be dismissed (1) because there is not genuine issue of fact regarding these claims, and (2) because Kirschke has failed to show that any of the Defendants violated clearly deprived him of his Fourteenth Amendment rights when they denied some of his requests for additional toilet pape.

**3. Retaliation**

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that:   (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the

protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

### A.  Denial of Toilet Paper as Retaliation for the Filing of Grievances

In a rather circular argument, Kirschke alleges that grievances he filed against Defendants for denying some of his requests for additional toilet paper, caused Defendants to retaliate against him by denying his subsequent requests for additional toilet paper. Kirschke asserts that each denial of toilet paper after he filed his grievance was a retaliatory act.

In the opinion of the undersigned, Kirschke's retaliation claim fails. Kirschke cannot establish that Defendants' denials of Kirschke's post-grievance requests for toilet paper were motivated by the filing of a grievance. Indeed, Kirschke acknowledges that after he submitted his grievance, Defendants treated him in the same manner as they had treated him before he submitted his grievance. (ECF No. 1, PageID.12-19, 22.) Defendants occasionally denied his requests for additional toilet paper, just as they had done prior to the filing of his grievance.

In the opinion of the undersigned, Kirschke's allegations fail to establish a genuine issue of material fact and fail to demonstrate that Defendants violated a clearly established right.

### B. Minor Misconduct Tickets

Kirschke argues that Defendants Nault and McKechnie issued minor misconduct tickets against him in violation of his equal protection rights and in retaliation for his grievance filing. Ambiguity regarding which misconduct tickets were filed and when they were filed leads the undersigned to recommend that these claims survive Defendants' motion for summary judgment.

First, Kirschke alleges that, on May 6, 2016, McKechnie wrote a misconduct ticket against him for having a roll of paper on top of his locker, in violation of posted unit rules. Kirschke admits that he violated the rule and was found guilty of the misconduct, but believes that he did not need to secure the toilet paper because his cellmate was watching over the toilet paper for him. (ECF No. 142, PageID.1589.) Kirschke alleges that he received 10-days loss of privileges.

Second, Kirschke alleges that, on May 12, 2016, he received a misconduct ticket from Defendant Nault for interfering with administrative rules while he was walking to the bathroom. As a result, Kirschke alleges that he received 20 hours of extra duty.

Defendants Nault and McKechnie argue that no record exists to support Kirschke's claim that he received minor misconduct tickets on these days. Defendants have attached an affidavit from Jaquine Castillo, who attests that Kirschke did not receive any misconduct tickets between April 25, and May 24, 2016. (ECF No. 131-5, PageID.1511-1512.)

Kirschke attached a grievance dated May 20, 2016, to his verified complaint asserting that he received various misconduct tickets during the months of April and May of 2016. (ECF No. 1-3, PageID.46-61.) Kirschke specifically addressed both the May 6 and May 12 misconduct tickets in his grievance. The Step I response, dated May 25 (KCF-16-05-744-17B) stated:

> Housing unit staff interviewed and stated that they did not make the statement the grievant claims. Staff further stated that grievant has been catching several misconducts due to his actions in the unit last month. ARUS Harrington also states that staff in A unit including himself have been nothing but professional and courteous to this prisoner. Grievant seems to have a problem following unit rules in recent weeks. Staff in A unit feel this grievance could be in retaliation for the recent misconduct received.

(ECF No. 1-3, PageID.53.) Like the May 11, 2016, grievance response (KCF 16-15-698-3D), this grievance response seems to contradict Defendants' argument that Kirschke did not receive misconduct tickets between April 25 and May 24, 2016. Defendants have made no effort to explain this discrepancy in the record. In the opinion of the undersigned, a question of material fact exists regarding whether Kirschke received misconduct tickets between April 25 and May 24, 2016.

Alternatively, Defendants argue that no evidence exists to support a claim that the misconduct tickets were issued in retaliation for Kirschke's grievance submission. In the opinion of the undersigned, Defendants Nault and McKechnie have failed to develop this argument. The Defendants have failed to present evidence that contradicts Kirschke's claims that the minor misconduct tickets were issued in retaliation or in violation of his equal protection rights. Defendants have not

submitted affidavits or any convincing evidence to support their arguments on these issues.

### 4. Fourteenth Amendment Equal Protection

Defendants assert that Kirschke's equal protection claims fail because he cannot establish membership in a protected class or that his fundamental rights were infringed. However, Kirschke's response brief indicates that he is bringing a "class of one" equal protection claim, and that he was treated differently than similarly situated prisoners. Kirschke alleges that when Defendant Nault issued him the misconduct ticket, on May 12, 2016, he was with walking to the bathroom with another prisoner who did not receive a misconduct ticket.[2] To prove his equal protection claim, Plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, he must demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).[3]

---

2  Kirschke alleges that the other prisoner was actually on a restriction that required him to ask for permission first before leaving his cell.

3  In "class-of-one" claims, "the plaintiff [does] not allege membership in a class or group" but rather simply "alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook*, 528 U.S. at 564. "[T]he hallmark of [a 'class-of-one'] claim is not the allegation that one individual was singled out, but rather, the allegation of arbitrary or malicious treatment not based on membership in a disfavored class." *Aldridge v. City of Memphis*, 404 F. App'x 29, 42 (6th Cir. 2010); see also *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 592 (9th Cir. 2008) ("The 'class of one' theory . . . is unusual because the plaintiff in a 'class of one' case does not allege that the defendants discriminate against a group with whom she shares

Similarly, Kirschke alleges that when Defendant McKechnie issued Kirschke a misconduct ticket on May 6, 2016 for storing a roll of toilet paper on top of his locker, one of his cellmates had a bowl stored on top of his locker and was not issued a misconduct ticket. In the opinion of the undersigned, a question of fact exists regarding whether Defendants Nault and McKechnie issued misconduct tickets in retaliation for grievance filings or in violation of Kirschke's equal protection rights.

## Recommendation

I respectfully recommend that the Court:

1) GRANT Defendants' motion for summary judgment with respect to Kirschke's Eighth Amendment and Fourteenth Amendment Due Process claims.

2) DENY Defendants' motion for summary judgment with respect to Kirschke's Fourteenth Amendment Equal Protection and the First Amendment retaliation claims against Defendants Nault and McKechnie.

If the Court accepts this recommendation Defendants Harrington, Pillions, MacDonald, Black, Miller, and Williams will be dismissed from this action.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections

---

characteristics, but rather that the defendants simply harbor animus against her in particular and therefore treated her arbitrarily.").

constitutes a waiver of any further right to appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).


Dated:    August 22, 2019                                  /s/ *Maarten Vermaat*
                                                                                          MAARTEN VERMAAT
                                                                                         U.S. MAGISTRATE JUDGE